UNITED STATES FIDELITY AND GUARANTY COMPANY

*v.*

CITY OF NEWARK et al.

[Submitted May 14th, 1907. Decided May 18th, 1907.]

1. *P. L. 1892 p. 369,* creating a lien on funds due public contractors for the benefit of laborers and materialmen, and providing for the enforcement of such lien, does not contemplate an action in the chancery court by the original contractor against the municipality.

2. *P. L. 1892 p. 369* creates a lien on funds due municipal contractors for the benefit of laborers and materialmen, which sections 1 and 5 declare shall extend to the full extent of the claim or demand and to the extent of the liability of the contractor for the claim preferred.—*Held,* that a proceeding to enforce such lien was a proceeding *in rem* limited to a determination of the lien claims against the contractors, and to the application of the funds due the contractors from the municipality to the extent necessary to pay such liens, or if the fund is insufficient, then to distribute the same among the lienors *pro rata.*

3. In a suit to enforce a lien on an amount due a municipal contractor, given by *P. L. 1892 p. 369,* the court has no jurisdiction to entertain a cross-bill by the contractor's representatives for the purpose of an accounting between such representatives and the municipality.

On motion to strike out cross-bill.

*Mr. Francis Child, Jr.,* and *Mr. Herbert Boggs,* for the motion.

*Mr. Sherrerd Depue, contra.*

HOWELL, V. C.

On August 15th, 1901, the city of Newark entered into a contract with Stewart & Abbott for the construction of a reservoir at Cedar Grove, in the county of Essex. A portion of the work provided for therein was sub-contracted a few days later to James Seme. Seme gave a bond to Stewart & Abbott conditioned for the due performance of his sub-contract, and the complainant, a

Maryland corporation which is engaged in the surety business, became surety to Stewart & Abbott thereon.

In June, 1903, Seme discontinued work under his sub-contract, and thereupon, in pursuance of a condition in the bond, the surety company, with the assent of Stewart & Abbott, undertook to finish Seme's contract, and this they claim they have now fully performed. On December 10th, 1904, Stewart & Abbott, so the bill claims, were indebted to the complainant for labor and materials furnished by it in the performance of the Seme contract in the sum of thirty-five thousand and odd dollars, which they refused to pay, and thereupon on that day it took steps under the Municipalities Lien law to obtain a lien on the moneys owing by the city of Newark to Stewart & Abbott. The bill alleges that at the time it was filed the city of Newark owed Stewart & Abbott several distinct and separate amounts of money arising out of the contract, which aggregated upwards of $135,000.

Some time in December, 1904, and, as the bill alleges, after the filing of the lien claim, the members of the firm of Stewart & Abbott transferred and assigned to James C. Stewart and Alexander M. Stewart the moneys due and to grow due under their contract. The bill claims that this assignment was subject to the complainant's lien claim.

In the meantime John L. Stewart, a member of the firm of Stewart & Abbott, died, leaving a will by which he appointed Alexander M. Stewart and James C. Stewart as executors thereof. The defendants are (1) the city of Newark, (2) the board of street and water commissioners of Newark, (3) Frederick W. Abbott, surviving partner of Stewart & Abbott, (4) James C. Stewart and Alexander M. Stewart, assignees of Stewart & Abbott, (5) John C. Stewart and Alexander M. Stewart, as executors of the will of John L. Stewart, deceased, (6) the Empire State Granite Company, another lienor.

The prayer is for a decree adjudging the validity of the complainant's lien and directing the city to pay over to the complainant the amount claimed therein out of the funds due or to become due from the city to Stewart & Abbott or their assignees, with interest and costs.

The city of Newark and the board of street and water commissioners answered this bill admitting the Stewart & Abbott contract and stating upon information and belief the Seme subcontract and the suretyship of the complainant thereon, but neither admit nor deny the relations between Seme and the surety company or between the surety company and Stewart & Abbott, and claim that they have no knowledge of the amount of money owing to the complainant by Stewart & Abbott. They deny that they have in hand the moneys claimed in that behalf in the bill, but say that there would be considerable money due to Stewart & Abbott under their contract with the city if they had performed all their obligations thereunder; that they had incurred large penalties and deductions from the contract price would have to be made, and that there would then be little, if anything, due to them on account of their contract.

In the twelfth paragraph of the answer the city uses this language:

"It submits to this court the question of how much, if anything, is due by the city of Newark or from the city of Newark to the said Stewart & Abbott, or to their assignee, or to this complainant, or to any person entitled to receive the same."

An answer was also filed by Frederick W. Abbott, surviving partner, and James C. Stewart and Alexander M. Stewart as executors and assignees. They admit the Stewart & Abbott contract, the Seme sub-contract, the bond of Seme and the surety company, Seme's abandonment of the work, its performance by the surety company, the filing of the alleged lien, the indebtedness of the city of Newark in large amounts to Stewart & Abbott, the assignment of the moneys due to James C. Stewart and Alexander M. Stewart, claiming that the assignment was made before the filing of the lien claim by the complainant, but they deny that Stewart & Abbott were indebted to the complainant in the sum of $135,000, or any other sum, or that the surety company acquired any lien upon any moneys due from the city of Newark, and they set out in detail the series of transactions and settlements between Stewart & Abbott and Seme and the surety company, and claim that the surety company is indebted to

Stewart & Abbott, or the persons who now represent them, in a large amount of money. They then exhibit their cross-bill against the surety company, setting up the transactions between Stewart & Abbott and their representatives on the one hand and Seme and the surety company on the other hand, and pray for an accounting of these transactions, and that the court may by its decree direct the surety company to pay to the answering defendants whatever may be found due on such an accounting.

This answer was subsequently amended by adding thereto at the conclusion of the cross-bill embodied therein another cross-bill separate and distinct from the one above mentioned, exhibited against the city of Newark and the board of street and water commissioners and the surety company (the complainant) the object and purpose of which is to charge the city of Newark with a large amount of work as extra work in addition to that provided for in the original contract of 1901, the prayer being that an accounting may be taken of the moneys due from the city of Newark and the board of street and water commissioners to Stewart & Abbott's present representatives, and that a decree be made directing the city to pay them the amount found due upon such an accounting, including interest.

This cross-bill, however, admits and claims in paragraph 45 thereof that, in addition to this claim for extra work which first appears in this cross-bill, the city of Newark owes to Stewart & Abbott's representatives large sums of money due under said contract which have not been paid over by it, the exact amount of which is unknown to them, but which they believe to be upwards of the sum of $132,000. There is no prayer in the bill for any discovery or other specific relief.

A motion is now made on behalf of the city of Newark under the two hundred and thirteenth rule to strike this last-mentioned cross-bill from the files, for the following reasons:

*First.* Because the cross-bill is multifarious in that it seeks different forms of relief against the complainant and the defendant, the city of Newark.

*Second.* Because the bill is filed under the Municipalities Lien law which creates a purely statutory jurisdiction, and there is no provision for affirmative relief of the nature prayed for.

*Third.* Because the cross-complainants have a complete and adequate remedy at law.

The only cross-bill that the moving defendant (the city of Newark) is interested in is the one that was brought into the case by the amendment above mentioned, and the only relief prayed thereby is that the city of Newark and the board of street and water commissioners may account to the Stewart & Abbott representatives for the extra work mentioned therein, and that a decree be made directing the city to pay the amount so found due. There appears to be no particular relief sought against the complainant. This being the situation, I shall discuss the motion without reference to the subdivisions of the reasons stated in the notice.

It will be well to begin by a consideration of the statute which authorizes the suit to be brought; it must be remembered that the proceeding is wholly statutory and can be in touch with the ordinary systematic methods of the court of chancery only at the point of procedure. Beyond mere procedure the rights, duties and liabilities of the parties are regulated by the statute. This act (*P. L. 1892 p. 369*) has its object expressed in the title. It is an act to secure to laborers and materialmen payment of moneys due to them for labor or materials furnished by them toward the performance of public works. It does not contemplate an action in this court by an original contractor against the municipality. Its office is merely to create a lien in favor of subcontractors, laborers and materialmen and to provide the means for foreclosing the same. It was largely on this ground that the court of errors and appeals held that the court of chancery alone had jurisdiction to entertain suits under the act. *Delafield Construction Co. v. Sayre, 60 N. J. Law (31 Vr.) 449.* As I read the statute the office of a suit under it is—*first,* to ascertain whether a lien has been formally perfected by proper filing and service of notices; *second,* whether sufficient money earned or to be earned under the contract remains on which the lien can fasten; and *third,* an ascertainment of the amount due on the lien and a decree against the municipality for that amount.

The reason and spirit of the act in my opinion will be satisfied by inquiring in this action, not how much money is actually due

from the municipality to the contractor, but whether sufficient money remains to meet the liens which shall be established. There seems to be no reason for pushing the inquiry beyond this point, and no reason for entertaining a litigation between the parties to the original contract excepting for the purpose of providing for the established liens.

The court of errors and appeals in the case just cited declares that there is no provision for a personal judgment against the contractor as a debtor, but that the right of the claimants to obtain such judgments against him in other actions is expressly preserved.

In *Garrison* v. *Borio, 61 N. J. Eq. (16 Dick.) 236,* Vice-Chancellor Grey declined to enter a personal decree against the lienor on a lien preferred under the act in question.

It is quite clear that the statute did not mean to authorize this court to make a final and determinative adjudication between the municipality and the contractor, but meant to have the inquiry go so far only as to ascertain whether there remained a sufficient amount of contract-money to pay the liens which are found to be valid liens. When we consider that the action to determine or terminate the lien may be brought by the contractor or by the municipality as well as by the claimant, and that their separate actions may be consolidated, and that the complainants' right to bring personal actions in other courts is preserved, we can readily see that the proceeding was intended to be a proceeding *in rem,* much like the proceeding for the foreclosure of a pledge or mortgage, and resembling in many of its features the ordinary bill of interpleader.

Again, the nature and extent of the lien created by the statute is another argument in favor of this view. Sections 1 and 5 describe these qualities and give a lien, not on the whole fund necessarily, but "to the full extent of such claim or demand" and "to the extent of the liability of the contractor for the claim preferred." These are limitations upon the extent of the lien, and, inasmuch as this court can only foreclose to that extent, it would seem as if the jurisdiction of the court must stop at that point.

In *Norton* v. *Sinkhorn, 63 N. J. Eq.* (*18 Dick.*) *313,* the court of errors and appeals held that the proceeding was *in rem;* that it was a controversy over a particular fund involving only the amount due to the contractor from the owner and the amount due to the lien claimants respectively.

Chief-Justice Depue says (at *p. 318*) :

"Where the amount due to the contractor is undisputed the sole question for adjudication is the amount due to the lien claimants, respectively, from the contractor; when that has been ascertained then the function of the court is to apportion the amount due the contractor among the lien claimants in the proper proportion, provided the fund under the control of the court is sufficient to answer that purpose; if not sufficient, then *pro rata* until the fund in hand is exhausted. At this stage the jurisdiction of the court under the statute ends. No personal judgment, either for or against a lien claimant, can be given, nor does the statute provide for a judgment against a municipality in case the amount due to the contractor exceeds the sums due to the lien claimants."

This being the nature of the proceeding, how stands the cross-bill with relation to it? A cross-bill is a mode of defence to the original suit and in its subject-matter it must be confined to the scope of the original cause of action and to the defence set out in the answer of the cross-complainant. In this case the cross-bill is not intended for any such purpose. To say that the city of Newark owes more than enough money to pay the liens described in the bill is no defence to the original suit. Such an allegation in a cross-bill does not aid in elucidating the problems raised by the original bill. The admission or claim in the cross-bill that the city owes more than enough to pay the alleged liens shows this in the most conclusive manner. In effect the cross-complainant comes into court saying there is money enough in the city treasury to pay all these so-called liens if they shall be established as such, and, according to our calculation, much more than enough, but we desire that the court shall go beyond the purview of the original suit and ascertain for us the amount of this excess and try out all the difficult questions which are raised

by the cross-bill in connection therewith, and ascertain for us the amount of this excess, and give us a decree and execution therefor. In other words, the cross-complainant comes into court asking for a decree *in personam* in a statutory suit which provides only for a remedy *in rem.*

If no money decree *in personam* can be made in this proceeding against the contractor, nor against the lienor, on the ground that the proceeding is one *in rem,* it is difficult to see how the court can make a money decree in favor of the cross-complainant against the municipality. In fact, Chief-Justice Depue, in the opinion just quoted, declares against the proposition.

In the *Norton Case* in chancery (*61 N. J. Eq. (16 Dick.) 508*), also before Vice-Chancellor Grey, Norton, the sub-contractor, who had furnished stone for a road which was being built by Sinkhorn & Walton in Mercer county, filed a bill to enforce a lien under the Municipalities Lien law. Sinkhorn answered that Norton had so delayed his performance of the stone contract that he was subjected to a loss in completing the work. He also filed a cross-bill against Norton claiming that the amount of loss was such that he was obliged to pay a greater sum than was coming to Norton and for the excess he prayed, by way of cross-bill, for a decree *in personam* against Norton. Norton then moved under rule 213 to strike this defence from the answer, and also to strike out the whole of the cross-bill which sought affirmative relief against him. The vice-chancellor struck out the cross-bill upon the ground that there was no provision for a personal judgment against the claimant, citing *Delafield* v. *Sayre, supra,* as an interpretation of a doubtful statute. He declared that this case had established a mode of procedure which had been followed, and that inasmuch as the cross-bill was wholly dependent for its support upon an interpretation of the statute that there might be a personal decree against the sub-contractor for the balance due from him, he struck out the whole cross-bill.

Coming on to the parts of the answer setting up the same defences practically, he struck out those also; the court of errors and appeals in *18 Dick. 313,* modifying the decree below, held that the cross-bill was properly stricken out, but that the answer should have been allowed to stand.

Leaving now out of consideration the question of procuring a personal decree in favor of the Stewart & Abbott representatives against the city of Newark, and omitting that portion of the prayer from the cross-bill, what is left amounts to a prayer for accounting. The cross-bill is not necessary to procure an accounting. All the relief which can be had under any prayer for an accounting can be had on the original bill and answers, so that the cross-bill is not only entirely unnecessary, but is worse than useless, because it adds to the expense and delay of finally adjusting the issues presented. *Johnson* v. *Buttler, 31 N. J. Eq. (4 Stew.) 36; Scott* v. *Lalor, 18 N. J. Eq. (3 C. E. Gr.) 301.*

It was argued against the motion that the submission by the city to this court of the question of the amount due by it on the contract was practically a consent that the court might take jurisdiction of all the matters in difference disclosed by the cross-bill.

I do not think that this statement in the answer should have any such broad construction. Manifestly what the city meant to do was to submit the issues raised by bill and answer, and, indeed, I do not think it could go so far as to admit a jurisdiction under the statute in question to make a decree not contemplated by it.

If my interpretation of the statute is correct this court, notwithstanding the submission, would still be without power to act, because it has no jurisdiction over the subject-matter. The cases cited in the cross-complainant's brief on this point are all cases in which the court has undoubted jurisdiction over the subject-matter.

My conclusion, therefore, is that the cross-bill must be stricken from the files.